## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
JAMES A. GREEN,                           )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )    Civil Action No. 05-1055 (ESH)
                                          )
LAWRENCE M. SMALL,                        )
Secretary, Smithsonian Institution,       )
                                          )
                    Defendant.            )
_____ )

### MEMORANDUM OPINION

Plaintiff James A. Green filed a *pro se*[1] complaint against his former employer, the

Smithsonian Institution, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et*

*seq.*, alleging that he had been subjected to both sexual harassment creating a hostile work

environment and retaliation.  (Compl. ¶¶ 43-62.)  Before the Court is defendant's Motion to

Dismiss and for Partial Summary Judgment.  As discussed below, defendant's motion will be

granted in part and denied in part.

### BACKGROUND

From the early months of 2000 until his departure in June 2003, plaintiff worked under

the supervision of Kim Workman-Parker as a Security Specialist in the Smithsonian Institution's

Office of Protection Services.  (Compl. ¶ 19; Def.'s Mot. Ex. 1 at 2; Def.'s Mot. Ex. 13.)

According to Green, Workman-Parker repeatedly touched him and otherwise acted in an

inappropriate, sexual manner during this period.  (Compl. ¶¶ 19-40.)  On February 25, 2002, after

_____

[1]  Plaintiff has since retained counsel.

a February 14 meeting with an Equal Employment Opportunity ("EEO") Counselor, plaintiff

filed a discrimination complaint with the Institution's Office of Equal Employment and Minority

Affairs ("the Office").  (Def.'s Mot. Exs. 2-3.)  In an April 2, 2002 Notice of Acceptance of

Discrimination Complaint, the Office acknowledged receiving Green's complaint and framed it

as presenting a single issue for investigation: "[w]hether [his] supervisor . . . on August 31, 2000,

June 7, August 22, and December 21, 2001, and January 8, 2002, subjected [him] to sexual

harassment which created a hostile work environment."  (Def.'s Mot. Ex. 2.)  Under the terms of

the Notice, Green was required to inform the Office within 10 days of any failure to "properly

define[] . . . the accepted allegation."  (*Id.*)  Plaintiff does not allege that he notified the Office of

any such error.  (See Def.'s Statement of Mat. Facts ¶ 4.)

Six months later, on September 4, 2002, plaintiff filed a retaliation complaint with the

Institution, alleging that his supervisor had improperly recorded a two-day absence in June as

unauthorized despite his having requested and obtained approval for the leave.  (Def.'s Mot. Ex.

11.)  In its September 25, 2002 Notice of Acceptance of Discrimination Complaint, the Office

indicated that it had received plaintiff's complaint and would accordingly "investigate . . .

[w]hether [plaintiff was] subjected to reprisal (prior EEO activity), when, on June 24 and 25,

2002 [plaintiff was] charged with being absent without leave (AWOL)."  (Def.'s Mot. Ex. 10 at

1.)  The Notice reiterated that plaintiff had 10 days during which to notify the Office that the

stated allegation had been improperly defined, and added that plaintiff was free to amend his

complaint at any time prior to the end of the investigation "to include issues or claims like or

related to those raised in the original complaint."  (*Id.* at 1-2.)  Again, plaintiff has not alleged

that he thereafter contacted the Office in an attempt to redefine the issue accepted for investigation.

The Institution removed plaintiff from his position on April 19, 2003, citing his alleged excessive absenteeism and a failure to follow leave procedures.  (Def.'s Mot. Ex. 13 at 1.)  Green first protested his termination in a May 3, 2003 appeal to the Merit Systems Protection Board ("MSPB"), asserting that he "was under doctor's care" during the time of his absence and that his termination -- which followed the EEO complaint he had filed with the Institution "[b]ack in 2001 & 2002" -- was in violation of Title VII and other federal discrimination statutes.  (Def.'s Reply Ex. 1 at 4.)  Green again contested his removal in a July 30, 2003 discrimination complaint alleging that the action was based on his "race, sex, disability, and prior EEO activity."  (Def.'s Reply Ex. 2 at 1.)  The Smithsonian's Office of Equal Employment and Minority Affairs dismissed the latter challenge in an August 20, 2003 letter explaining that Green's discrimination complaint could have been filed with either the agency or the MSPB, "*but not both*."  (Def.'s Reply Ex. 3 at 1 (citing 29 C.F.R. § 1614.302(b)) (emphasis in original).)  Because plaintiff had raised his discrimination claims in an MSPB appeal "more than two months prior to filing [his] EEO complaint," the Office concluded that his July 30 complaint must be dismissed.  (*Id.* at 2 (citing 29 C.F.R. § 1614.107(a)(4)).)  Though the letter notifying Green of the dismissal set forth his rights to an appeal (*id.* at 3), there is no record that he further pursued the dismissed complaint.

On August 20, 2003 -- "desir[ing] to settle the MSPB appeal without need for further litigation" -- plaintiff and defendant entered a Settlement Agreement and General Release.  (*Id.*)  Under the terms of the agreement, the Institution promised to "cancel" Green's removal,

eliminate all references to his termination from his personnel file, and amend its attendance

records to reflect "a leave without pay (LWOP) status rather than absence without leave (AWOL)

on the dates he was charged AWOL, from January 1, 2003 through April 19, 2003 [as well as]

for the period from April 20, 2003 through August 30, 2003." (*Id.* at 1-2.) In return, plaintiff

agreed to resign voluntarily from his position and "withdraw[]" the appeal of his termination.

(*Id.*) The parties further "agree[d] that the facts and terms of the Settlement Agreement and

General Release shall be treated as confidential, and that said Agreement shall be enforced by the

Merit Systems Protection Board."[2/]  (*Id.* at 2.) After determining that the parties understood the

agreement, that they had entered into it voluntarily, and that it was "lawful on its face," an MSPB

ALJ dismissed Green's appeal and approved the settlement agreement for entry into the record.

(Def.'s Mot. Ex. 14 at 1-2.)

Plaintiff continued to pursue his discrimination and retaliation claims following his

termination and later settlement. After requesting a hearing before an EEOC ALJ on the claims

raised in his 2002 complaints (*see* Def.'s Mot. Ex. 4 at 1), Green submitted an August 11, 2003

Prehearing Report setting forth four issues for resolution: first, "[w]hether . . . [his]

supervisor . . . subjected [him] to sexual harassment on August 31, 2000, June 7, 2002 [*sic*],

August 22 and December 2001, and on January 8, 2002 . . . when she attempted to and did grab

---

[2/]  Because of this confidentiality provision, defendant filed its Motion to Dismiss and for Partial
Summary Judgment -- which included the settlement as an exhibit -- under seal. *See Green v.
Small*, No. 05-cv-1055 (D.D.C. Dec. 20, 2005) (Order unsealing defendant's Motion to Dismiss
and for Partial Summary Judgment and supporting documents). On November 1, 2005, the
Court ordered plaintiff to show cause why defendant's motion, supporting documents, or portions
thereof should not be unsealed. *Id.* at 1. Plaintiff failed to make such a showing and, on
December 20, 2005, the Court ordered that defendant's motion and all supporting documents be
unsealed in their entirety. *Id.* at 2.

his genitals and/or touched [him] in an inappropriate manner"; second, "[w]hether [his] supervisor . . . subjected [him] to reprisal because of prior EEO activity, when [he] was charged with absence without leave . . . on June 24 and 25, 2002"; third, "[w]hether [he] was subjected to a hostile work environment from August 2000 through September, 2002"; and, finally, "[w]hether [he] suffered employment related stress and an aggravation of the employment related stress during the period August 31, 2000 through September, 2002."  (Def.'s Mot. Ex. 4 at 1 and Ex. 6 at 1.)  More than a year later,[3] Green submitted a second Prehearing Report stating an additional issue for resolution: "[w]hether [he] was subjected to and suffered retaliation when he was separated from his position with the Institution on April 19, 2003 . . . because of prior EEO activity."  (Def.'s Mot. Ex. 7 at 2.)  Plaintiff followed this Report with an October 27, 2004 Motion to Amend the Issue contending that he had not complained only of the five instances of inappropriate contact listed in the allegation accepted for investigation, but rather, he had challenged "a continuous hostile work environment," including "other severe and pervasive instances which occurred on a nearly daily basis and which were unwelcome and offensive." (Def.'s Mot. Ex. 8 at 1.)  Green's motion also requested that the adverse actions underlying both his discrimination and retaliation complaints be expanded to include his supervisor's removal of duties during the two-year period preceding his departure, as well as "[t]he agency's unlawful placement of [him] on AWOL, suspension and termination in June of 2002."  (*Id.* at 1-2.)  No mention of the settlement was made.  (*Id.*)  The ALJ denied plaintiff's motion and later entered a

---

[3]  Plaintiff's consolidated complaints were initially dismissed by an ALJ in an August 18, 2003 order.  (*See* Compl. Ex. 1 at 3.)   Plaintiff appealed the Institution's subsequent Final Order to the EEOC's Office of Federal Operations, which reversed the Order in a June 24, 2004 decision instructing the Institution to request a hearing before an EEOC ALJ.  *Id.*

January 19, 2005 judgment in favor of the Institution on the two issues articulated in the

Institution's April 2, 2002 and September 25, 2002 notices.  (Def.'s Mot. Ex. 9 at 1 and Ex. 1 at 2,

14.)  On February 4, 2005, the Institution issued a Final Order denying Green relief on the two

issues investigated and later considered by the ALJ:

> [First,] [w]hether, in violation of Title VII of the Civil Rights Act of
> 1964 . . . , the Complainant was discriminated against upon the basis
> of his sex (male) when his supervisor subjected the Complainant to
> sexual harassment which created a hostile work environment on
> August 31, 2000, June 7, 2001, August 22, 2001, December 21, 2001,
> and January 8, 2002.
>
> [Second,] [w]hether, in violation of Title VII, the Complainant was
> subjected to reprisal (prior EEO activity) when the Complainant was
> charged with being Absent Without Leave (AWOL) on June 24 and
> 25, 2002.

(Compl. Ex. 1 at 2.)

Plaintiff initiated this suit on May 9, 2005.  Green did not limit his complaint to the

hostile environment and retaliation claims addressed by the ALJ.  (*See* Def.'s Mot. Ex. 1 at 2;

Def.'s Mot. Ex. 2 at 1; Def.'s Mot. Ex. 10 at 2.)  Rather, plaintiff further alleged that his

supervisor deprived him of duties and projects for discriminatory and retaliatory reasons from

August of 2000 through June of 2002; that he was suspended and later terminated for

discriminatory and retaliatory reasons; that his supervisor reduced communications, withheld

necessary information, and required him to do security checks for retaliatory reasons; that his

supervisor lowered his evaluation scores "due to his refusal to cooperate with her sexual

harassment, his protesting sexual harassment and his filing an EEO complaint," thus denying him

promotions; and that he was given "improper job assignments" for discriminatory and retaliatory

reasons.  (Compl. ¶¶ 22-3, 28, 32-3.)  Plaintiff requests declaratory, injunctive and monetary

relief.  (Compl. ¶¶ a-f.)

**ANALYSIS**

Defendant's Motion to Dismiss and for Partial Summary Judgment, filed on October 31,

2005, challenges Green's expanded allegations, contending that "Plaintiff's claims in this case

should be limited to the two issues the Smithsonian's EEO office accepted for investigation and

plaintiff litigated before the Administrative Judge."  (Def.'s Mot. at 13.)  According to defendant,

plaintiff failed to administratively exhaust all other claims raised in his complaint, requiring their

dismissal here.  (*Id.* at 9-13.)  Defendant further argues that the doctrine of *res judicata* bars

plaintiff from raising his claim of retaliatory removal because the same issue was raised in

Green's appeal to the MSPB and later settled.  (*Id.* at 13-6.)  Finally, defendant contends that

plaintiff's claim of retaliatory suspension must be dismissed as there is no evidence that he was in

fact suspended.  (*Id.* at 16.)  The Court will address each of these arguments *seriatim*.

**I.      Legal Standard**

Under Rule 12(b)(6), dismissal is appropriate only where the defendant has demonstrated

"'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief.'"  *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442

(D.C.Cir.1989) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In making this

determination, a court is to presume that all of the allegations in plaintiff's complaint are true and

draw all reasonable factual inferences in plaintiff's favor.  *Maljack Prods., Inc. v. Motion Picture

Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C.Cir.1995); *Phillips v. Bureau of Prisons*, 591 F.2d 966,

968 (D.C.Cir.1979).  "However, the court need not accept inferences drawn by plaintiff[] if such

7

inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

When materials other than those "facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice" are presented to and not excluded by the court, a motion to dismiss is handled not under the standards of Rule 12(b)(6) but rather those applicable to motions for summary judgment under Rule 56. *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); Fed.R.Civ.P. 12(b).  In such cases, the dispositive question becomes whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A dispute as to a "material fact" -- one that "might affect the outcome of the suit under the governing law" -- is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Accordingly, a moving party is entitled to summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  As under Rule 12(b)(6), the Court must draw every justifiable inference in favor of the nonmoving party and accept that party's evidence as true when considering a motion for summary judgment.  *Anderson*, 477 U.S. at 255; *see also Washington Post Co. v. United States*

*Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).  This said, the

nonmovant must offer more than unsupported allegations or denials if summary judgment is to

be avoided.  *Greene v. Dalton*, 164 F.3d 671, 674-75 (D.C. Cir. 1999).

## II.     Exhaustion

Under Title VII, a plaintiff alleging a violation of his civil rights by a federal agency must

"initiate his . . . complaint with the agency."  *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir.

1983).  Only after a plaintiff has notified an EEO counselor of the allegedly discriminatory act,

filed a formal discrimination complaint with the agency, allowed the agency time to investigate

the complaint, and received a "notice of final action" can the plaintiff file a civil action in federal

district court. See 29 C.F.R. §§ 1614.105(a)(1), 1614.105(d), 1614.106(a)-(b), 1614.108(f); 42

U.S.C. § 2000e-16(c).  "Congress did not casually impose th[is] requirement . . . .  Nor is the

requirement a technicality.  Rather, it is part and parcel of the congressional design to vest in the

federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility'

for maintaining nondiscrimination in employment."  *Kizas*, 707 F.2d at 544.

### A.     Retaliation

In arguing that "virtually all" of the claims raised in Green's complaint must be dismissed,

defendant first contends that plaintiff exhausted only one of the retaliation claims presently

before the Court -- whether, as the issue was phrased in the Institution's Final Order, Green "was

subjected to reprisal (prior EEO activity) when [he] was charged with being Absent Without

Leave (AWOL) on June 24 and 25, 2002."  (Def.'s Mot. at 9; Compl. Ex. 1 at 2.)  According to

defendant, none of the other "discrete claims of retaliation" set forth in plaintiff's complaint --

including his allegations that his supervisor retaliated against him by denying him duties and

projects "within the time period of August 2000 through June of 2002," lowering performance

evaluation scores and thereby denying him deserved promotions, subjecting him to a hostile work

environment, suspending and later terminating him, and giving him improper job assignments --

were raised in an EEO complaint and litigated administratively.  (Def.'s Mot. at 9-10;

Compl. 22-3, 28, 32-3.)  In opposing defendant's motion, plaintiff does not assert that he

exhausted administrative remedies for each of the retaliatory actions alleged in his complaint.

Rather, Green contends that "[i]t is well settled that . . . claims of retaliation *do not require*

*administrative exhaustion*."  (Pl.'s Opp'n at 2-3 (emphasis in original) (citing *Baker v. Library of*

*Congress*, 260 F.Supp.2d 59, 66 n.4 (D.D.C. 2003) ("[I]t is generally accepted that the

exhaustion of administrative remedies doctrine does not apply to claims based on alleged

retaliation.")).)  Plaintiff also suggests that his administrative complaint concerned "ongoing and

continuous . . . discrimination" by his employer, and thus it is sufficient for purposes of

exhaustion that one of numerous alleged retaliatory actions was brought before the agency for

investigation and resolution.  (*Id*. at 2.)

    Plaintiff's arguments are without merit.  Prior to the Supreme Court's decision in *National*

*Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), it was generally accepted that

a plaintiff need not exhaust retaliation claims arising after the filing of an administrative

complaint -- a narrower rule than that asserted by plaintiff.  *See Sussman v. Tanoue*, 39

F.Supp.2d 13, 21 (D.D.C. 1999) ("[M]ost courts have concluded that plaintiffs are not required to

exhaust administrative remedies for claims of retaliation which arise following the filing of

administrative complaints.") (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)).

*Morgan*, however, emphasized the need for "strict adherence to the procedural requirements

specified by the legislature," ultimately holding that "a Title VII plaintiff raising claims of

discrete discriminatory or retaliatory acts must file his charge within the appropriate time period."

536 U.S. at 105, 122.  This language required a reconsideration of the exhaustion standards

applicable in retaliation cases.  *See, e.g., Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 148

(D.D.C. 2005) ("*Morgan* rejected the so-called continuing violation doctrines that allowed

plaintiffs to recover for discrete acts of discrimination or retaliation that had not been separately

exhausted but were 'sufficiently related' to a properly exhausted claim."); *Bowie v. Ashcroft*, 283

F. Supp. 2d 25, 34 (D.D.C. 2003) ("[P]rior cases allowing plaintiffs to file subsequent, similar

claims for the first time in federal court simply do not survive *Morgan*.").  In the wake of

*Morgan*, this Court concluded that the decision "only . . . prohibit[ed] review of claims that

plaintiff presents 'for the first time in federal court,'" and thus held that "separate initiation of

administrative exhaustion for related post-complaint conduct is not required . . . where the ends

of administrative exhaustion have been served by the pursuit of administrative remedies with

regard to the subsequent acts."  *Velikonja v. Mueller*, 315 F. Supp. 2d 66, 74 (D.D.C. 2004)

(quoting *Bowie*, 283 F. Supp. 2d at 34).

     Plaintiff has not satisfied this standard.  Unlike the claims held to have been exhausted in

*Velikonja*, those challenged by defendant were neither "presented by plaintiff [to the agency] by

amendment" nor "included among those accepted for investigation during the processing of her

administrative complaint."  *Id.*; *see also Romero-Ostolaza*, 370 F. Supp. 2d at 150 (dismissing

one of plaintiff's retaliation claims for failure to exhaust "because none of plaintiff's EEO

complaints ma[de] charges concerning [the alleged retaliatory conduct]").  To the contrary, when

notified of the single alleged instance of retaliation it had accepted for investigation, plaintiff

11

made no attempt to augment the "accepted allegation" or amend his complaint prior to the

conclusion of the investigation -- this despite the Institution's express invitation to do so in its

September 25, 2002 Notice of Acceptance of Discrimination Complaint.[4/]  (*See* Def.'s Mot. Ex.

10 at 1-2.)  This is simply not a case where the plaintiff "diligently pursued" the retaliation claims

challenged by defendant.  *See Velikonja*, 315 F. Supp. 2d at 74.

Accordingly, with two exceptions -- Green's challenge to his supervisor's charge that he

was absent without leave in June of 2002, which was properly raised before the Institution, and

his challenge to his removal, which is addressed below -- plaintiff's retaliation claims must be

dismissed for want of administrative exhaustion.

### B.      Hostile Work Environment

Defendant also contends that plaintiff has "raise[d] numerous claims of sexual harassment

and gender-based discrimination in support of his hostile work environment claim . . . [which]

were never raised in Plaintiff's EEO complaint."  (Def.'s Mot. at 10.)  According to defendant,

---

[4/] Because the documents involved in the administrative proceedings underlying this case are matters of public record, the Court's consideration of them here does not convert defendant's motion for dismissal into a motion for summary judgment governed under Rule 56. *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221, 1228 (D.C. Cir. 1993) (noting a "narrow exception" to the general rule against looking outside the pleadings in resolving a 12(b)(6) motion that "allow[s] courts to take 'judicial notice' of facts on the public record"); *Cunningham v. Litton Industries*, 413 F.2d 887, 889 n.2 (9th Cir. 1969) (taking judicial notice of an EEOC decision in resolving a motion to dismiss); *Branum v. United Parcel Service, Inc.*, 2005 WL 3533698, *21 n.1 (W.D. Pa. December 23, 2005) ("[E]xhibits, such as . . . EEOC documents . . . , may be considered in deciding the motion to dismiss because 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case . . . may be considered by the district court without converting the motion into one for summary judgment.'") (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 376 (3d ed. 2004)); *Koch v. CGM Group, Inc.*, 2001 WL 392523, *7 n.1 (S.D. Ind. Apr. 3, 2001) (taking judicial notice of an EEO complaint referenced in plaintiff's pleadings in resolving defendant's motion to dismiss).

plaintiff exhausted the sexual harassment claim outlined in the Institution's April 2, 2002 Notice

of Acceptance of Discrimination Complaint: "[w]hether [his] supervisor, Ms. Kim Workman-

Parker, System Administrator, on August 31, 2000, June 7, August 22, and December 21, 2001,

and January 8, 2002, subjected [him] to sexual harassment which created a hostile work

environment." (*Id.* (quoting Def.'s Mot. Ex. 2).)  Green's complaint, however, extends beyond

these specific instances.  He alleges that his supervisor acted in an inappropriate and sexual

manner with other male employees; that he was subjected to "severe and pervasive instances [of

sexual harassment] which occurred on a nearly daily basis"; that his supervisor's "gender-based"

actions included the removal of duties, as well his suspension and later termination; and that he

"lost promotions due to these events, since [his supervisor] gave him lowered evaluations due to

his refusal to cooperate with her sexual harassment." (Compl. ¶¶ 20-55.)  "Having limited his

administrative complaint to five specific incidents of sexual harassment," defendant argues that

"Plaintiff cannot raise additional claims of sexual harassment to support his hostile work

environment claim in this litigation . . . .  Whether viewed as a matter of exhaustion or waiver,

Plaintiff plainly cannot raise additional harassment claims in this lawsuit." (Def.'s Mot. at 12.)

In response, plaintiff contends that the hostile environment claim filed with the Institution

involved allegations of "ongoing and continuous sexual harassment and discrimination." (Pl.'s

Opp'n at 2.)  Thus, Green suggests, the requirements of exhaustion have been satisfied since the

allegations challenged by defendant here are sufficiently related to those raised in plaintiff's

administrative complaint. (*Id.* at 22-3 (citing *Bell v. Gonzales*, 398 F.Supp.2d 78, 2005 WL

691865, *4 (D.D.C. Mar. 25, 2005) ("[A] Title VII lawsuit includes the claims that are 'like or

reasonably related to the allegations of the [administrative] charge and growing out of such allegations.'")).)

To the extent that plaintiff's present complaint attempts to raise a claim of *quid pro quo* harassment or some alternate theory of sex-based discrimination (*see* Compl. ¶ 22 (alleging "gender-based tangible losses including . . . [the] removal of job duties and job projects" as well as "[t]he agency's unlawful placement of [plaintiff] on AWOL, suspension and termination"); *id.* ¶ 32 (alleging that plaintiff "lost promotions . . . since [his supervisor] gave him lowered evaluations due to his refusal to cooperate with her sexual harassment); *id.* ¶ 37 (alleging that plaintiff's supervisor reminded him that she was responsible for his evaluations when he protested demands he believed inappropriate)), it must be dismissed; there is no question that plaintiff's assertion of a hostile environment was the only claim of sex discrimination exhausted at the administrative level.  (*See* Def.'s Mot. Ex. 2 (April 2, 2002 Notice of Acceptance of Discrimination Complaint).)  *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 62, 67 (1986) (distinguishing between *quid pro quo* claims, which allege "harassment that involves the conditioning of concrete employment benefits on sexual favors," and hostile environment claims, which allege "sexual harassment . . . sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment") (internal quotations omitted).

Defendant's efforts to further constrict plaintiff's hostile environment claim, however, are unpersuasive.  Unlike allegations of retaliation -- each of which constitutes a "discrete discriminatory act[]" for purposes of exhaustion -- "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment

practice.'" *Morgan*, 536 U.S. at 113, 117 (quoting 42 U.S.C. § 2000e-5(e)(1)).  Thus, defendant's

suggestion that plaintiff raised new, unexhausted "claims" by referencing more than the "five

specific incidents of sexual harassment" cited in the administrative notice is without merit.  (*See*

Def.'s Mot. at 10, 12.)  Green filed a complaint with the Institution asserting that his supervisor

had subjected him to a pattern of sexual harassment sufficient to create a hostile work

environment (*see* Def.'s Mot. Ex. 2), thereby giving the Institution "notice of [his] claim and [the]

opportunity to handle it internally." *Velikonja*, 315 F. Supp. 2d at 74.  The ends of exhaustion

have thus been satisfied, and the Court will accordingly deny defendant's Motion to Dismiss

insofar as it seeks dismissal of a portion of plaintiff's hostile environment claim.

## III.    Removal Claims

Defendant next contends that plaintiff's challenges to his termination are barred by the

doctrine *res judicata*, arguing that the same issues were raised in the MSPB appeal that Green

ultimately withdrew as part of a settlement agreement with the Institution.  (Def.'s Mot. at 13.)  In

opposition, plaintiff maintains that the effect of the settlement on his present termination claims

cannot yet be determined as the Court has insufficient facts regarding the agreement's scope.

(Pl.'s Opp'n at 3.)  Plaintiff notes that the language of the settlement agreement makes no

reference to the discrimination claims raised in his complaint, and requests Rule 56(f) discovery

"to  . . . investigate and review the entire MSPB record and . . . depose any relevant parties to this

case in order to fully determine and/or dispel any disputes by the parties over the terms and

conditions of Plaintiff's settlement agreement with the Agency."[5]  (*Id.* at 3, 6-7.)

---

[5]  In requesting Rule 56(f) discovery, plaintiff's counsel mistakenly asserts that Green's
"employment record was apparently sealed" under the terms of the settlement agreement and asks
that the Court allow him "a proper opportunity to discover any facts he will need to properly

Because plaintiff has failed to raise a genuine issue as to whether the parties' August 20, 2003 agreement was intended to settle the termination claims raised in his present complaint, the Court will grant defendant summary judgment.  In appealing his termination to the Merit Systems Protection Board, Green specifically alleged that the Institution's action was in violation of Title VII since he had "filed an EEO . . . [b]ack in 2001 & 2002 . . . at the Smithsonian." (Def.'s Reply Ex. 1 at 4.)  No reasonable jury could find that this claim was not included within the reach of the parties' settlement, in which the Institution "denie[d] any impropriety in removing" Green and the parties expressed their "desire to settle the MSPB appeal without need for further litigation."  (Def.'s Mot. Ex. 13 at 1.)  Moreover, as a result of the agreement, the Institution cancelled plaintiff's removal -- the very action complained of here -- and Green resigned from his position voluntarily, withdrawing his appeal.  (*Id.* at 1-3.)  Plaintiff has offered no evidence to contradict the clear scope of the settlement, but instead requests discovery regarding the terms of an agreement he negotiated and signed.  (Pl.'s Opp'n at 3-7.)  Since there is no genuine question that the settlement covered plaintiff's present challenge to his termination, summary judgment is appropriate with respect to the claim.  *See Village of Kaktovik v. Watt,* 689 F.2d 222, 230 (D.C. Cir. 1982) ("An agreement to settle a legal dispute is a contract.  Each party agrees to extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract.") (citations omitted); *Simon v. Circle Assocs., Inc.*, 753 A.2d 1006, 1012 (D.C. 2000) ("Generally, settlement agreements are determined according to

---

respond to Defendant's request to unseal his personnel file."  (Pl.'s Opp'n at 7.)  As earlier noted, after plaintiff failed to show cause why defendant's motion, supporting documents, or portions thereof should remain sealed, the Court ordered their unsealing on December 20, 2005.  *Green v. Small*, No. 05-cv-1055 (D.D.C. Dec. 20, 2005).  Plaintiff's request is therefore untimely and the Court denies his request for a protective order.  (*See* Pl.'s Sur Reply at 4.)

principles of contract law.  A valid and enforceable contract requires both (1) agreement as to all material terms, and (2) intention of the parties to be bound.") (internal quotations and citations omitted); *see also* 18A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4443 (3d ed. 2004) ("The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties.").

**IV.     Suspension Claims**

Defendant also argues that plaintiff's claims of unlawful suspension should be dismissed as there is no record of his having been suspended.  (Def.'s Mot. at 16.)  Since filing his complaint, plaintiff has acknowledged that he was not in fact suspended.[6]  (*See* Pl.'s Surreply at 3 n.2.)  Because there is no genuine issue regarding plaintiff's once-alleged suspension, the Court will grant defendant summary judgment with respect to plaintiff's suspension claims.

## CONCLUSION

For the reasons stated above, the Court will grant in part defendant's Motion to Dismiss and for Partial Summary Judgment [#21]. The Court will accordingly dismiss all but one of plaintiff's retaliation claims, leaving only plaintiff's challenge to his being charged absent without leave on June 24 and June 25 of 2002.  To the extent plaintiff attempts to raise claims of sex-based discrimination beyond his hostile environment claim, such claims will also be dismissed.

---

[6]  Defendant challenges plaintiff's December 18, 2005 surreply -- which he "filed to clarify the legal arguments Plaintiff made in response to Defendant's Motion to Dismiss and for Partial Summary Judgment," (Pl.'s Sur Reply at 1) -- as inappropriately filed.  (Def.'s Opp'n to Pl.'s Sur Reply at 1.)  Because defendant has had an opportunity to respond to plaintiff's clarifications in its December 28, 2005 reply, the Court declines to strike plaintiff's surreply.

The Court will also grant defendant summary judgment on plaintiff's suspension and termination

claims.  Defendant's Motion will otherwise be denied.


                                          _____s/_____
                                          ELLEN SEGAL HUVELLE
                                          United States District Judge

Date: January 19, 2006